162 So. 681

**TUSCALOOSA COUNTY v. ALABAMA
GREAT SOUTHERN R. CO.**

**6 Div. 675.**

Supreme Court of Alabama.
June 20, 1935.

Foster, Rice & Foster and J. G. Madison,
all of Tuscaloosa, for appellant.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellee.

**BOULDIN, Justice.**

This cause was here on former appeal. Tuscaloosa County v. Alabama Great Southern R. Co., 227 Ala. 428, 150 So. 328. The facts are there concisely stated as follows:

"The location of the United States Veterans' Hospital some five miles north of Tuscaloosa increased traffic to such an extent, in the opinion of the board of revenue of Tuscaloosa county, as to necessitate a change of location of what is known as the Loop road, a public highway, where it crossed the tracks of the Alabama Great Southern Railroad Company at Box Springs cut. To this end the county instituted condemnation proceedings for the right of way and demanded of the railroad that it construct, at its own expense, a bridge over its tracks where the new road crossed. This the railroad declined to do, and the county proceeded to construct the bridge at a cost of $4,585.31, and institutes this suit to recover the sum so expended from the railroad upon the theory that the duty of such construction rested upon the road.

"While plaintiff offered evidence tending to show the inadequacy for present traffic purposes of the old road and bridge over the railroad crossing, yet a new highway was laid out and a new bridge demanded of the defendant and constructed by plaintiff at a different location, all with the intention that the old way would be abandoned." 227 Ala. 428, 429, 430, 150 So. 328.

On second trial, after affirmance of the judgment of the trial court granting defendant's motion for new trial, the plaintiff added certain amended counts, but it is not seriously insisted they present a case governed by different legal principles.

The real purpose of the present appeal is to invite a reconsideration and departure from our holdings on former appeal.

Attention is called to Code, § 10287, providing that on such appeal this court shall be governed by what in its opinion is law, without regard to former ruling. Louisville & Nashville R. Co. v. Western Union Telegraph Co., 195 Ala. 124, 71 So. 118, Ann. Cas. 1917B, 696; Birmingham News Co. v. Birmingham Printing Co., 213 Ala. 256, 104 So. 506.

We first deal with Code, § 7027, and appellant's criticism of certain comments thereon in our previous decision, supra. In the early history of railroad construction, kindred provisions appeared in railroad charters. Acts of 1853-4, p. 278, § 19.

The general statute, now Code, § 7027, dates from the Act of March 8, 1876, "To authorize the incorporation of railroad companies in this State." Acts 1875-6, p. 249.

Section 15 of that act looked to the construction of railroads across navigable streams, other railroads, and public roads of this state. That section became section 1842 of the Code of 1876, the pertinent provision of which reads: "Such company shall also have the right to cross, occupy and use any public road in this state with its railroad, and is authorized to change such public road, but in all such cases it shall place such road or highway in a condition satisfactory to the court of county commissioners of the county."

In the Code of 1886, § 1581, this statute was recodified to read: "The corporation is authorized, in the construction of its road * * * to use, or to cross, or to change public roads, when necessary in the building, construction, or maintenance of its roadway or track, but must place the public road used, or crossed, or changed, in a condition satisfactory to the authorities of the county having control thereof; *but where practicable the track of the railroad must go under or over the public roadway.*" (Italics supplied.)

In the Code of 1896, this statute became section 1164, without change.

The Act of October 2, 1903 (Acts 1903, p. 310), revised and recast the laws for the organization and regulation of corporations, defining their powers, etc.

Section 9 of such act enlarged the former statute under consideration so as to empower railroad companies and other utility corporations, having the power of eminent domain, to enter upon the property of any person for the purpose of making preliminary surveys and locations of

lines to be constructed. This statute, without change, so far as material here, became section 3493 of the Code of 1907, then section 7027, Code of 1923. We observe that in the Code of 1923 no parenthetical sections are given, save the Code of 1907. It would be more accurate if listed thus: Section 7027 (3493) (1164) (1581) (1842). In all these sections, the pertinent provisions of the Code of 1886, quoted above, are brought forward without change.

Clearly this is a railroad construction statute. It has always appeared in the chapter on corporations, defining their powers and duties. It intends to give railroad companies a free hand in locating and surveying new lines, fixing their grades, and the like.

To this end is conferred the power to cross public roads, even to take and occupy the site of an existing public road, and so move or change the location of the public road, if need be.

In return, the statute, with equal clearness, puts on the railroad corporation the obligation to readjust the public road to the satisfaction of the county authorities, at its own expense, imposing no financial obligation on the county because of the railroad's disturbance of the status quo in the construction of its line.

█ With equal clearness, this statute does not deal with elimination of grade crossings. It aims to prevent the creation of grade crossings by requiring the railroad to go under or over the public road as so readjusted. It declares a grade crossing is not satisfactory, if practical to avoid it. This can only mean the construction of a public road bridge over the railroad or a pass under the railroad at the expense of the railroad company. We think this the clear effect and purpose of the statute, the practical construction given it through all the years, and the construction given recognition in former decisions of this court. Louisville & Nashville Railroad Co. v. Hall, 87 Ala. 708, 6 So. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84; Mobile & Girard R. R. Co. v. Commissioners' Court of Pike County, 97 Ala. 105, 11 So. 732; Southern R. Co. v. McCourry, 221 Ala. 600, 130 So. 216.

█ The holding on former appeal to the effect that this statute applies only to grade crossings, as stated in 227 Ala. 428, 150 So. 328, headnote No. 2 is, therefore, disapproved. The question is of importance as affecting existing bridges so constructed, as well as future railroad construction.

█ But all we have said is in line with the chief point decided on former appeal, viz.: This statute deals only with a status growing out of the construction of new railway lines; has no application to bridges on new highways over existing railroads. The insistence of appellant would impose on the railroad company the burden of building one bridge after another if changing conditions render it desirable to abandon one location of the crossing, and change to another.

█ We approve and readopt our former opinion fully covering this question. We need not reiterate. For clarity we merely add that the general statutory or common-law duty of railroads to maintain grade crossings and their approaches, a safeguard to the public without regard to whether the railroad or public road was first constructed, so fully considered in cases cited and discussed on former appeal, does not imply an obligation of the kind here asserted.

Affirmed.

All the Justices concur, except KNIGHT, J., not sitting.